IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:

MACHNE MENACHEM, INC.

  Debtor.

CIVIL ACTION No. 3:07-CV-0057

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is Debtor-Appellant Machne Menachem Inc.'s appeal (Doc. 1) from Bankruptcy Judge John J. Thomas' October 5, 2006 decision, which confirmed the Modified Second Amended Plan of reorganization filed by Appellee Yaakov Spritzer.  Spritzer moves to dismiss the appeal as equitably moot.  (Doc. 67.)  Because the Plan has been substantially consummated, because no stay has been obtained, because there is at least some reliance on the finality of the Plan by third parties not before this Court, because granting the relief Appellant requests would unravel the Plan, and because of the public policy favoring finality of bankruptcy judgments, Appellee's motion will be granted.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 158(a), which provides that the district courts of the United States have jurisdiction to hear appeals from final judgments, orders, and decrees of the bankruptcy court sitting within their respective judicial districts.

## BACKGROUND

Appellant Machne Menachem, Inc., a not-for-profit corporation organized under the laws of New York, owns and operates a religious summer camp for Hasidic Jewish male children in Lackawaxen, Pike County, Pennsylvania.  (Op. of John J. Thomas,

United States Bankruptcy Judge, Sept. 6, 2006, Doc. 14-8, at 1 n.2.)  Appellee Yaakov Spritzer was one of the original members of the Board of Directors of Appellant who, after litigation in the United States District Court for the Eastern District of New York, was removed from the Board of Directors.  (*Id.*)  Spritzer is also the proponent of the Modified Second Amended Plan of Reorganization ("Plan"), which he filed on December 19, 2005 and which Judge Thomas confirmed by Order of October 5, 2006.  (Plan § 1.20.)  In accordance with the Plan, a "New Entity," Summer Recreation for Children, Inc., ("SRFC") was formed by the Proponent, Spritzer, prior to the Plan's effective date.  (Plan § 1.17). Among other things, the Plan called for all of Appellant's real property and tangible and intangible personal property to be sold and transferred to SRFC, of which Appellee Spritzer is the president and director.  (Plan § 5.3; Decl. of Yaakov Spritzer, Apr. 20, 2007, Doc. 69 ¶ 5.).  The Plan also provided that the discharge of Appellant's debts was "in full settlement and release of" Machne Menachem's estate's claims against its creditors, including Spritzer.  (Plan § 4.5(c); *see also id.* §§ 2.2(c), 4.1(c), 4.3(b) and 4.4(c).)

By order of January 11, 2007 (Doc. 7), this Court denied Appellant's emergency motion to stay confirmation of the plan pending appeal (Doc. 6).  On January 16, 2007, Appellant filed a renewed motion to stay pending appeal (Doc. 10), which I denied after a hearing at which I concluded that Judge Thomas did not abuse his discretion in denying Appellant's motion for a stay pending appeal.  (Memorandum Order of January 18, 2007, Doc. 19.)  On April 20, 2007, Appellant Spritzer filed the instant motion (Doc. 67) to dismiss Appellant's appeal as equitably moot.  This motion is fully briefed and ripe for disposition.

2

**LEGAL STANDARD**

A district court hearing an appeal of a bankruptcy court order reviews the bankruptcy court's legal determinations de novo, its factual findings for clear error, and its exercise of discretion for abuse thereof. *In re United Healthcare Sys., Inc.*, 396 F.3d 247, 249 (3d Cir. 2005).

**DISCUSSION**

Appellee Spritzer argues that Machne Menachem's appeal is barred by the principles of equitable mootness, under which "an appeal should be dismissed as moot when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable." *In re Continental Airlines*, 91 F.3d 553, 559 (3d Cir. 1996) (en banc) (affirming district court's dismissal of trustees' appeal as equitably moot ). Unlike constitutional mootness, equitable mootness is "a broader concept that has developed in bankruptcy law," and "the use of the word 'mootness' [is] a shortcut for the court's decision that the *fait accompli* of a plan confirmation should preclude further judicial proceedings." *In re PWS Holding,* 228 F.3d 224, 236 (3d Cir. 2000) (internal citation omitted). The doctrine of equitable mootness "prevents a court from unscrambling complex bankruptcy reorganizations when the appealing party should have acted before the plan became extremely difficult to retract." *Nordhoff Invs. Inc. v. Zenith Elecs. Corp.*, 258 F.3d 180, 185 (3d Cir. 2001) (holding district court did not abuse discretion in dismissing appeal from bankruptcy court as equitably moot). The doctrine, however, "is limited in scope and should be cautiously applied." *In re PWS Holding,* 228 F.3d at 236 (holding that an appeal should not have been dismissed for equitable

3

mootness where the appeal sought "only alterations to the plan rather than an unraveling of the reorganization"). Equitable mootness involves "a discretionary balancing of equitable and prudential factors." *Id.* (quoting *In re Continental Airlines*, 91 F.3d at 560).

In *Continental Airlines*, the Third Circuit Court of Appeals adopted the doctrine of equitable mootness, and identified five (5) factors to be considered by courts in determining whether it would be equitable or prudential to reach the merits of a bankruptcy appeal:

> (1) whether the reorganization plan has been substantially consummated, (2) whether a stay has been obtained, (3) whether the relief requested would affect the rights of parties not before the court, (4) whether the relief requested would affect the success of the plan, and (5) the public policy of affording finality to bankruptcy judgments.

*Id.* at 560. The court also noted that "[a]lthough these five factors have been given varying weight, depending on the particular circumstances, the foremost consideration has been whether the reorganization plan has been substantially consummated." *Id.; see also In re Zenith Elecs. Corp.*, 329 F.3d 338, 340 (3d Cir. 2003) (describing the "substantially consummated" factor as "the first and most important *Continental* factor"). Consideration of the factors also will at times overlap, and the application of the equitable mootness doctrine employs balancing, practicality, and prudence, rather than rigid rules. *See, e.g., In re PWS*, 228 F.3d at 236; *Mac Panel Co. v. Virginia Panel Corp.*, 283 F.3d 622, 625 (4th Cir. 2002).

**I. Substantial Consummation**

To assess whether a plan has been substantially consummated, the Court looks first at the Bankruptcy Code, which defines "substantial consummation" as:

> (A) transfer of all or substantially all of the property proposed by the plan to be transferred;
> (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
> (C) commencement of distribution under the plan."

11 U.S.C. § 1101(2). But satisfaction of this definition, while "a first step in applying this factor, ... is not sufficient." *In re Zenith*, 329 U.S. at 344. Even more significant is the court's consideration of "the probability that granting the appeal would unravel the plan, upon which numerous parties were at that point in reliance." *Id.*

### A. Statutory Definition

Appellee Spritzer submits that prong (A) of the statutory definition of substantial consummation is met because he paid a deposit in excess of one million dollars ($ 1,000,000) to the chapter 11 trustee and disbursing agent Mark J. Conway, part of which served as consideration for the transfer of Appellant's real property and tangible personal property to SRFC and because that transfer has been completed, with the transactions closed on October 12, 2006 and the deed to the real property in Pike County, Pennsylvania recorded the following day. (Br. in Supp., Doc. 68, at 4-5.)

In support of prong (B), Spritzer submits that SRFC refinanced the real property in order to obtain additional funds at a lower interest rate that it used to "improve the neglected condition of the Camp that had fallen into disrepair under the Debtor's stewardship." (Decl. of Yaakov Spritzer, Doc. 69 ¶¶ 21, 35-36.) Specifically, Spritzer

5

enumerates improvements that SRFC has completed or is in the process of completing, such as winterizing the facility for a year-round caretaker to occupy; purchasing beds, canoes, kayaks, maintenance vehicles, sports equipment, and books; repairing cabins and setting up a camp office; burying water lines; restoring the underground electric, security, public announcement, and telephone systems; updating the gymnasium; and applying for status as a 501(c)(3) corporation.  (*Id.* ¶ 37.)  Spritzer also submits that he and his wife guaranteed repayment of the loan SRFC took out when it refinanced the property "so that it may once again provide a camp opportunity for disadvantaged children of the Crown Heights community."  (*Id.* ¶ 33.)

And in support of prong (C), Spritzer points out that the remainder of his deposit to the trustee has already been used to distribute payment of "almost every claim allowed under the Plan."  (Br. in Supp., Doc. 68, at 3-6.)  The trustee submitted a declaration in support of Appellee's motion stating that "currently, all Class 1, 2, 3, 4, and 5 claims (except the claims of Yaakov Spritzer, A-One Merchandising, and the Schreiber Family Foundation) have been paid in full" and that the claim of the Schreiber Family Foundation "remains unpaid only because of a dispute between Meir Schreiber and his wife, Sarah Schreiber, who are engaged in divorce proceedings."  (Decl. of Mark J. Conway, Esq., Doc. 70 ¶¶ 29-30.)

Appellant does not dispute that these statutory requirements for substantial consummation have been met, and Judge Thomas, who also considered equitable mootness in the context of Appellant's motion for reconsideration in the bankruptcy court, concluded that the substantial confirmation factor weighed in favor of mootness.  (Op. of John J. Thomas, United States Bankruptcy Judge, Dec. 29, 2006, Doc. 6-10, Appellant's

6

Ex. J.). Judge Thomas reached this conclusion because "[t]here is no disagreement that all tangible property of the Debtor has been transferred to a nonprofit corporation under the plan," "distribution to certain creditors has already taken place," and "[s]ince the Debtor was not the proponent of this liquidating plan, little remains for the Debtor post confirmation but the advancement of certain litigation and a continuation of their corporate purpose." (*Id.* at 4.)

While the statutory definition of substantial consummation has been met, I must also take into account what the court in *In re Zenith* called an even more significant consideration: "the probability that granting the appeal would unravel the plan, upon which numerous parties were at that point in reliance." 329 U.S. at 344. It is this consideration on which Appellant bases its argument that the plan has not been substantially consummated.

**B. Would Appeal Unravel the Plan?**

Appellant argues that granting the relief sought in its appeal would not unravel the Plan because its appeal seeks to invalidate only one portion of the Plan: a release in which Machne Menachem relinquished claims it had against Spritzer. (Br. in Opp'n, Doc. 92, at 5.) Even if it successfully invalidates the release, Appellant argues, "other provisions of the plan may go forward." (*Id.*) In support, Appellant cites *In re PWS Holding Corp.*, in which the holder of subordinated notes of the Debtor corporation and the indenture trustee for the subordinated notes challenged (a) a release of the debtor's estate's claims that certain aspects of the prior leveraged recapitalization could be avoided, (b) a limitation of liability (to willful misconduct or gross negligence only) arising

7

from work that members of a creditors' committee and other professionals provided in relation to the reorganization, and (c) a release of the debtors' "preference claims." 228 F.3d at 232-35. The court there rejected the debtors' argument that "the appeal, if successful, would necessitate the reversal or unraveling of the entire plan of reorganization" and that the appeal was therefore equitably moot. *Id.* at 236. Instead, the court stated, "[t]here are intermediate options." *Id.* Although the plan "ha[d] been substantially consummated," the court concluded that "[t]he releases (or some of the releases) could be stricken from the plan without undoing other portions of it." *Id.*

Here, Appellant argues that like in *In re PWS*, invalidating the release of claims against Spritzer need not unravel the entirety of the Plan. (*See* Br. in Opp'n, Doc. 92, at 5.) Appellee, however, besides arguing that Appellant has waived objections to the releases by not timely raising them (Reply Br., Doc. 93, at 3-6) and that the basis for its challenge to the releases is without merit (*id.* at 6-9), also posits that invalidating the releases here, unlike those in *In re PWS*, would indeed unravel the Plan. (*Id.* at 9-12.) Specifically, Appellee argues, the releases in *In re PWS* were gratuitous[1], whereas the releases here were given in consideration for (1) Spritzer providing a one million dollar ($ 1,000,000) deposit to fund the Plan, (2) Spritzer and other holders of Class 5 claims

---

[1] This assertion that the releases were gratuitous is supported by the fact that the first group of released claims, the debtors' avoidance claims, had been evaluated by an Examiner as "unlikely to succeed ... not promising, ... [and subject to] significant defenses." *In re PWS*, 228 F.3d at 234. Additionally, the debtors indicated they released the third group of released claims, their preference claims, not as consideration for any other provisions in the reorganization plan, but rather "in order to facilitate and rehabilitate post-reorganization relationships with key suppliers." *Id.* at 235.

agreeing to consensually subordinate their claims, and (3) other Debtors, besides Spritzer, agreeing to support of the Plan.  (*Id.* at 10.)  Appellee argues that:

> having benefitted from the use of those funds to pay its creditors, the Debtor cannot spring out of hiding and try to undo the Releases to which it had not objected at any time before or at the confirmation hearings. ... Eliminating the releases would knock the props out of the confirmed Plan because Spritzer would have fully performed his obligations under the Plan but the Debtor would be taking away part of the consideration for which Spritzer was agreeing to pay over $1.0 million as the Plan proponent and funder.

(*Id.*)  This case, Appellant posits, is less like *In re PWS* than it is like *MAC Panel Co. v. Virginia Panel Corp.*, 283 F.3d 622 (4th Cir. 2002), in which a creditor, Virginia Panel Corporation ("VPC") appealed from a plan to the extent it released VPC's claims against the parties who had funded the plan (the Craycrofts).  The Fourth Circuit Court of Appeals rejected VPC's assertion that vacating the release would not undo the reorganization or affect third parties, stating that if the release was vacated, "the condition for the Craycrofts' $1.1 million contribution would be undone."  *Id.* at 226.  "To grant VPC its relief on appeal would thus require returning to the Craycrofts their $1.1 million.  And doing that would require recouping significant funds already paid out to creditors who are not parties to this litigation."  *Id.*  The releases in the Plan here were, by their terms, made in consideration for the distributions made under the plan, which weighs in favor of finding that, like in *MAC Panel*, granting Appellant the relief it seeks would unravel the Plan.

Additionally, a case on which the *PWS* court relied and which also found that vacating a release would not unravel the plan, is distinguishable.  *In re Chateaugay Corp.*, 167 B.R. 776, 778 (S.D.N.Y. 1994), involved a release of National Fire Insurance Company of Hartford, which acted as a surety to the debtors, from claims by the debtors

9

or the debtors' creditors; that release was provided in exchange for the surety depositing money into an escrow account which would be paid to debtors. The bankruptcy court approved this settlement over the objections of the debtors' other surety, Aetna Casualty and Surety Company. *Id.* at 778-79. The district court held that Aetna's appeal was not equitably moot, because while the most drastic change it could effect would be the return of six million dollars ($6,000,000) from the debtors to National Fire, the debtors had been revived after reorganization "into a multi-billion dollar operation with $200 million in working capital." *Id.* at 779. In such a situation, "[i]t is difficult to conceive how a potential liability of, at most, several million dollars could unravel the Debtors' reorganization." *Id.*

In the instant case, like in *In re Chateaugay*, the release being challenged was provided as consideration for a deposit that was used to pay the debtor's creditors. The instant case is distinguishable, however, in the effect that returning the deposit (a necessary step if the consideration for that deposit, the release, is invalidated) would have. In *Chateaugay*, the debts would still be able to be paid; in the instant case, though, if Spritzer's one million dollar ($1,000,000) deposit were returned to him, Machne Menachem's debts would not be paid. In other words, invalidating the release here would unravel the reorganization plan.

A more recent case from within this circuit which relied on *In re PWS* and *In re Chateaugay* to hold that a creditor's appeal was not equitably moot, is likewise distinguishable. In *In re Aurora Foods, Inc.*, No. C.A. 04-166 GMS, 2006 WL 3747306, at *4 (D. Del. Dec. 19, 2006), the court concluded that even if the creditor's appeal successfully invalidated the release of its 6.85 million dollar ($6,850,000) claim against

the debtor, this invalidation would not unravel the reorganization plan.  The plan in *Aurora Foods* involved an eighty-five million dollar ($85,000,000) investment from a party other than the creditor; in other words, the deposit was not made in consideration for the release, and invalidating the release would therefore not require returning the deposit from which the plan's distributions were made.  *See id.* at *2-3 & n.3.  Furthermore, after reorganization, the debtor in *Aurora Foods* was valued at more than nine-hundred and thirty million dollars ($930,000,000) and projected to grow.  *Id.* at *4.  "Given the projected strength of the debtor following reorganization," the court concluded, "the Plan need not be undone to satisfy a $6.85 million contested payment."  *Id.*  This situation stands in contrast to the facts before the Court today, where invalidating the release that served as consideration for Spritzer's deposit would leave no alternative source of funding for the distributions to creditors that have already been made.

Consideration of the cases cited above weighs in favor of a finding that an appeal, if successful, would unravel the Plan, and therefore weighs in favor of a finding of substantial consummation.

**II. No Stay Has Been Obtained**

Relevant to the second factor in the equitable mootness inquiry, no stay has been obtained by Appellant Machne Menachem.  Indeed, as Judge Thomas noted, Appellant did not seek a stay when it appealed from the provisional confirmation September 19, 2006, when the Plan was confirmed October 5, 2006, when Appellant filed its motion for reconsideration in the bankruptcy court October 16, 2006, or when it filed its appeal

October 18, 2006.  (Op. of John J. Thomas, United States Bankruptcy Judge, Dec. 29, 2006, Doc. 6-10, Appellant's Ex. J, at 4.)  "It was not until the proponent, Yaakov Spritzer, filed a notice of substantial confirmation on October 30, 2006, that the Debtor moved for a stay pending reconsideration."  (*Id.* at 4-5.)

Although the parties dispute whether a timely appeal preserves all objections, even those made after confirmation or in the absence of a stay, (Br. in Opp'n, Doc. 92, at 4; Reply Br., Doc. 93, at 4-5), the question of whether objections have been waived is separate from consideration of whether an appeal is equitably moot.  *See In re Continental*, 91 F.3d at 561-62 (stating that although a stay pending appeal is *required by the Bankruptcy Code* only in limited circumstances, such a stay is available in many cases and a party who appeals without availing himself of that protection does so at his own risk).  Further, although Appellant emphasizes that it did eventually seek a stay, the court in *Continental Airlines* stated that "[e]ven the seeking of a stay may not be enough" because "a stay not sought, and a stay sought and denied, lead equally to the implementation of the plan for reorganization."  91 F.3d at 562 (internal quotation marks omitted).  Thus, the second factor is duplicative of the first "in the sense that a plan cannot be substantially consummated if the appellant has successfully sought a stay."  *In re Zenith Elec. Corp.*, 329 F.3d at 347.  Because it is undisputed that a stay has not been obtained, the second factor weighs in favor of equitable mootness.

**III. Reliance By Third Parties on Finality of the Plan**

The third factor, "whether the relief requested would affect the rights of parties not before the court," requires considering whether third parties, particularly investors, have relied on the finality of the transaction. *In re Continental*, 91 F.3d at 560, 562.  Although the investor in the Plan, Spritzer, is currently before this Court, Appellee argues that other third parties, the Class 1, 2, 3, 4, and 5 creditors and administrative expense claimants, "have relied on the Plan to receive payments on their long overdue claims." (Br. in Supp., Doc. 68, at 18.)  Appellee also points out that on February 1, 2007, SRFC refinanced the property it received through the Plan with a seven hundred thousand dollar ($700,000) loan from Dime Bank.  (*Id*. at 9.)  That loan, while guaranteed by Spritzer, is secured by a mortgage and security agreement on the property, such that Dime Bank is also relying on the finality of the confirmation order.  (*Id.* at 9, 19.)  Additionally, SRFC itself, while controlled by Spritzer, is nonetheless a third party not before this Court which is relying on the finality of the Plan to prepare to run a summer camp.  (*Id.* at 18.)  Appellant does not respond to these arguments.  I conclude that although the main investor in the Plan, Spritzer, is before this Court, the third factor weighs at least slightly in favor of finding the appeal equitably moot.

**IV. Relief Affecting the Success of the Plan**

The fourth factor, "whether the relief requested would affect the success of the plan," *In Re Continental*, 91 F.3d at 560, was characterized by the court in *Nordhoff Invs., Inc. v. Zenith Elecs. Corp.*, as "whether Appellants' concerns could be remedied without

13

unraveling the entirety of the plan or whether they seek to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court." 258 F.3d at 189 (internal quotation marks omitted). This inquiry thus duplicates the question, addressed above, whether the relief Appellant requests, if granted, would unravel the Plan. This question has been already answered in the affirmative. This factor weighs in favor of mootness.

**V. Public Policy Affording Finality to Bankruptcy Judgments**

The caselaw in this area evidences a public policy in favor of affording finality to bankruptcy confirmation orders. *See Nordhoff Invs., Inc.* 258 F.3d at 190; *In re Continental Airlines*, 91 F.3d at 565. Appellant did not respond to Appellee's arguments that this last factor weighs in favor of finding equitable mootness in this case. (*See* Br. in Supp., Doc. 68, at 22-23; Br. in Opp'n, Doc. 92.) This factor, in the view of Judge Thomas, "may actually be the most compelling item on this issue" in light of the lengthy history of this case, which includes five (5) years of litigation in bankruptcy that included two (2) confirmation hearings and an "extended appeals process" as well as litigation in other jurisdictions "for many years" before the bankruptcy proceedings. (Op. of John J. Thomas, United States Bankruptcy Judge, Dec. 29, 2006, Doc. 6-10, Appellant's Ex. J, at 5.) Indeed, Judge Thomas, who observed that after this protracted litigation, "[t]he confirmed plan had the effect of allowing the tangible camp property to change hands while permitting the current directors to retain control of the corporate organization," concluded that "[i]f any scenario presents a more compelling argument for advancing the

14

finality of a court judgment, I have not been made aware of such case." (*Id.*)

The reason that Judge Thomas, who denied Machne Menachem's motion for reconsideration on the basis that it presented insufficient grounds to grant a Rule 59 motion, chose not to dispose of the motion on mootness grounds was his view that doing so would be overreaching because such a decision is best made by an Article III judge. (*Id.* at 5-6.)  Having reviewed Judge Thomas' factual findings for clear error and conducted a de novo review of the parties' legal arguments regarding equitable mootness, I conclude that the public policy favoring finality of bankruptcy judgments, like the other factors discussed above, weighs in favor of dismissing Appellant's appeal as equitably moot.

## CONCLUSION

Because the reorganization plan has been substantially consummated, because no stay has been obtained, because there is at least some reliance on the finality of the Plan by third parties not before this Court, because granting the relief Appellant requests would unravel the Plan, and because of the public policy favoring finality of bankruptcy judgments, Appellee's motion to dismiss the appeal as equitably moot will be granted.

An appropriate order follows.

March 31, 2008  /s/ A. Richard Caputo
Date  A. Richard Caputo
  United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

IN RE:

MACHNE MENACHEM, INC.

Debtor.

CIVIL ACTION No. 3:07-CV-0057

(JUDGE CAPUTO)

**ORDER**

Now, this   31st   day of March, 2008, it is **HEREBY ORDERED** that Appellee Yaakov Spritzer's motion (Doc. 67) to dismiss Appellant Machne Menachem, Inc.'s appeal (Doc. 1) as equitably moot is **GRANTED**.

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge